# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THE RAJ AND SONAL ABHYANKER FAMILY TRUST, derivatively on behalf of UpCounsel, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2020-0521-KSJM |
| MASON BLAKE, MATTHEW FAUSTMAN, and GREG RUDIN, | ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| UPCOUNSEL, INC. | ) ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: March 4, 2021
Date Decided: June 17, 2021

Ann M. Kashishian, KASHISHIAN LAW LLC, Wilmington, Delaware; Raj Abhyanker, Nicholas Craft, Wensheng Ma, LEGALFORCE RAPC WORLDWIDE, Mountain View, California; *Counsel for Plaintiff The Raj and Sonal Abhyanker Family Trust*.

Alan D. Albert, O'HAGAN MEYER PLLC, Wilmington, Delaware; Todd A. Roberts, Nicole S. Healy, ROPERS MAJESKI, Redwood City, CA; *Counsel for Defendants Mason Blake, Matthew Faustman, and Greg Rudin*.

**McCORMICK, C.**

In 2019, UpCounsel, Inc. ("UpCounsel" or the "Company") entered into an agreement to license its software to LinkedIn Corporation (the "LinkedIn Agreement"). The LinkedIn Agreement required the Company to cease operations, dissolve, and use commercially reasonable efforts to ensure that certain employees accept employment offers from LinkedIn. The transaction was approved by 85% of the UpCounsel stockholders acting by written consent, and UpCounsel closed on the transaction.

The Raj and Sonal Abhyanker Family Trust ("Plaintiff" or the "Trust") refused to consent to the transaction on the belief that it would adversely impact the value of UpCounsel. Through its trustee, Raj Abhyanker, Plaintiff demanded that UpCounsel: not re-direct traffic to LinkedIn, require that certain directors be recused from board decisions and removed from the board, and initiate litigation against certain directors and LinkedIn. The board refused Plaintiff's demands.

Plaintiff then filed this litigation against UpCounsel's former CEO Mason Blake, former interim CEO Greg Rudin, and Chairman Matthew Faustman (collectively, "Defendants"). Plaintiff claims that Defendants breached their fiduciary duties by approving the transaction, were unjustly enriched by the transaction, and violated Section 275 of the Delaware General Corporation Law (the "DGCL") by adopting a plan of dissolution without stockholder approval. Defendants have moved to dismiss the complaint pursuant to Court of Chancery Rules 23.1 and 12(b)(6), and this decision largely grants that motion.

## I.    FACTUAL BACKGROUND

The facts are drawn from the Verified Complaint (the "Complaint"), its exhibits, and documents incorporated by reference.[1]

At all relevant times, UpCounsel's board of directors (the "Board") comprised Martina Lauchengco, Venky Ganesan, Matthew Faustman, and Mason Blake. Faustman is the Board Chairman. Blake has been the Company's CEO since February 2019. Greg Rudin was the interim CEO for about one week in February 2019. The Complaint does not state whether Rudin was involved in any decisions relevant to Plaintiff's claims during his one-week stint as CEO.

Plaintiff is a family trust that owns UpCounsel common stock. Plaintiff's trustee, Abhyanker, and his law firm were engaged in a federal lawsuit against UpCounsel from 2018 to 2019. UpCounsel settled the lawsuit by issuing common stock to Plaintiff. After the settlement, Abhyanker agitated for reform at UpCounsel and even offered to resign from his position to become UpCounsel's CEO. According to the Complaint, UpCounsel rebuffed these offers and did not provide Abhyanker with information about the sales process that led to the LinkedIn Agreement.

The sales process culminated in September 2019, when the Board unanimously recommended the LinkedIn Agreement to stockholders. As part of the LinkedIn Agreement, UpCounsel agreed to make "commercially reasonable efforts" to: (1) ensure

---

[1] C.A. No. 2020-0521-KSJM, Docket ("Dkt.") 1 ("Compl."); *see also Furman v. Del. Dep't of Transp.*, 30 A.3d 771, 774 (Del. 2011) (permitting consideration of a document outside the pleadings "where [the] extrinsic document is integral to a plaintiff's claim and is incorporated into the complaint by reference").

2

that certain employees, including Faustman and Blake, would "commence employment" with LinkedIn; (2) "cease commercial operations;" and (3) "wind-down its business within 120 days of the Closing Date . . . and liquidate and dissolve the Company as a corporation as promptly as practicable thereafter."[2]

The Board determined to seek stockholder approval for the LinkedIn Agreement. Stockholders were provided an Information Statement that included the proposed transaction documents with LinkedIn. After obtaining written consents authorizing the transaction from stockholders holding more than 85% of shares entitled to vote, UpCounsel entered into the LinkedIn Agreement.

Blake provided Abhyanker with notice of the stockholder written consents on October 1, 2019, pursuant to Section 228(e) of the DGCL. Blake wrote, by email: "Over the next 3-4 months, UpCounsel will be migrating certain assets, clients, lawyers and demand over to LinkedIn. Also, some UpCounsel employees accepted job offers to join LinkedIn. At the end of this 3-4 month migration window, UpCounsel will be winding down and dissolving the business."[3] Blake also stated that "[a]fter paying the company's liabilities, the remaining assets of the company will be well below the liquidation preference payable [to] the company's Series A Preferred Stock stockholders pursuant to the certificate of incorporation" and "[a]s a result, there will be no assets remaining to distribute to the holders of . . . Common Stock."[4] Blake described the "transaction with

---

[2] Dkt. 11 ("Blake Decl.") Ex. 2 ¶¶ 8–9.

[3] Compl. Ex. F.

[4] *Id.*

3

LinkedIn" as "the culmination of an extensive process we went through with our board and investors and many potential acquirers to determine the best outcome for UpCounsel."[5] Blake requested that Abhyanker keep the information confidential.[6]

After receiving the October 1, 2019 communication, Abhyanker emailed Blake to express his disappointment. He demanded to inspect UpCounsel's books and records pursuant to Section 220 of the DGCL, but the Company rejected the demand because Abhyanker had expressly waived information rights when entering into the settlement agreement through which Plaintiff acquired stock.

Abhyanker initiated a lawsuit seeking to enjoin the LinkedIn Agreement in California state court on October 9, 2019. The California court denied both motions on the grounds that Plaintiff failed to establish irreparable harm and was not substantially likely to prevail on the merits.

Subsequently, Abhyanker made a series of demands on UpCounsel in his capacity as Plaintiff's trustee.

On January 25, 2020, Abhyanker sent the Board a demand to not redirect traffic to LinkedIn, to have Blake and Faustman recuse themselves from decisionmaking on various matters, and to institute litigation against Blake, Faustman, and LinkedIn.[7] Abhyanker entitled the January 25 email: "URGENT NOTICE - Minority Shareholder NOTICE to

---

[5] *Id.*

[6] *Id.*

[7] Blake Decl. Ex. 4. The court may consider pre-suit communications for Rule 23.1 purposes. *City of Tamarac Firefighters' Pension Tr. Fund v. Corvi*, 2019 WL 549938, at *2 & n.3 (Del. Ch. Feb. 12, 2019).

UpCOUNSEL board ->>>> Notice of Objection to Prospective Action by UpCounsel, Inc. & LinkedIn."[8] Abhyanker stated in the email that "[u]ntil our lawsuit [sic] filed against UpCounsel . . . are resolved," the Board is on notice that redirecting traffic to LinkedIn would cause the Trust to "suffer irreparable harm" due to UpCounsel's "diminished" goodwill, revenue diverted to LinkedIn, and decreasing asset value.[9] Abhyanker asserted that the Board's redirection of traffic to LinkedIn would be "a gross breach of [their] fiduciary duties" and would "give rise to . . . a shareholder derivivitive [sic] lawsuit."[10] Abhyanker also made a "demand that Matthew Faustman, Mason Blake recuse themselves from ANY and ALL decision [sic]" regarding traffic redirection to LinkedIn.[11] He additionally "demand[ed] that Mason Blake be removed as the 'part time CEO'" of UpCounsel.[12]

On January 27, 2020, Abhyanker sent a another demand to the Board to terminate Faustman and Blake and to file a contract interference tort claim against LinkedIn, Faustman, and Blake.[13] Abhyanker entitled the January 27 email: "Immediate Demand to Act, UpCounsel, Inc. Board."[14] Abhyanker stated in the email that "[t]his email serves as an Official Notice to the Board, per *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993) . . .

---

[8] Blake Decl. Ex. 4 at 1.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] Blake Decl. Ex. 5.

[14] *Id.* at 1.

[and] serves as a former [sic] demand" by the Trust.[15] Abhyanker demanded that the Board "[i]mmediately terminate . . . Faustman and Blake from the UpCounsel, Inc. board . . . and sue them for breaching their fiduciary duties, and unjust enrichment and self dealing [sic]."[16] If the Board refused to take such action, Abhyanker demanded that the Board "[i]mmediately file a Third Party Interference of Contract claim against LinkedIn, Faustman, and Blake."[17]

Defendants state that the Board met to discuss Abhyanker's various demands, including whether the Company should proceed with performance of its contractual obligations to LinkedIn in light of these demands, whether Faustman and Blake should recuse themselves from voting on these matters, and whether the Company should sue LinkedIn, Faustman, or Blake.[18] Defendants assert these facts based on documents outside of the pleadings, which the court need not consider for purposes of the instant motion.

On February 7, 2020, Plaintiff filed a complaint in the Superior Court of California against LinkedIn and Defendants asserting claims for breach of contract, fraud, failure to comply with 8 *Del. C.* § 275, breach of duty of loyalty, and unjust enrichment.[19] On March 5, 2020, in light of a Delaware forum selection provision in the Company's certificate of incorporation, the Superior Court of California dismissed all of Plaintiff's

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] Blake Decl. ¶¶ 12–13.

[19] Dkts. 11, 17 ("Barnes Decl.") Ex. 2.

6

claims except the breach of contract and fraud claims.[20]  Almost four months later, Plaintiff

filed this action.[21]

The Complaint nominally asserts four causes of action, but the first two causes of

action are indistinguishable:

- In Counts I and II, Plaintiff alleges that Defendants breached their fiduciary duties.[22]

- In Count III, Plaintiff alleges that Defendants breached Section 275 of the DGCL pertaining to dissolution.

- In Count IV, Plaintiff claims that Defendants were unjustly enriched by the LinkedIn Agreement.

---

[20] Barnes Decl. Ex. 7.

[21] Plaintiff moved for expedited, injunctive relief, which the court denied on the basis of laches.  *See* Dkts. 2, 45.

[22] The second claim is cast as a breach of fiduciary duty "to the company," Compl. at Second Claim for Relief, but that is no different from Count I.  Aside from circumstances inapplicable here, fiduciary duties are owed to the corporation and its stockholders. *See, e.g.*, *Dohmen v. Goodman*, 234 A.3d 1161, 1168 (Del. 2020); *OptimisCorp v. Waite*, 137 A.3d 970, 2016 WL 2585871, at \*3 (Del. Apr. 25, 2016) (TABLE); *Polk v. Good*, 507 A.2d 531, 536 (Del. 1986).  At oral argument, Plaintiff indicated that it intended Count I to be a direct claim and that the Complaint contained "a mere scrivener's error."  Dkt. 44 at 27.  Because a party cannot verbally amend a complaint at oral argument, this argument does not serve to amend the pleadings.  *See* Ct. Ch. R. 15 (outlining the process for amending and supplementing pleadings).

Count I also alleges that Defendants, who are all fiduciaries, aided and abetted in breaches of fiduciary duties.  Compl. at First Claim for Relief.  Under Delaware law, only a non-fiduciary can be liable for aiding and abetting a breach of fiduciary duties.  *See Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 817 A.2d 160, 172 (Del. 2002) ("The elements of a claim for aiding and abetting a breach of a fiduciary duty are . . . a defendant, who is not a fiduciary, knowingly participated in a breach . . . .").  Perhaps for this reason, Plaintiff later abandoned its claim for aiding and abetting by failing to brief it.  *See* Dkt. 39 ("Pl.'s Answering Br."); *see also Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("[I]ssues not briefed are deemed waived.").

As relief, Plaintiff seeks a permanent injunction, "economic damages including, but not limited to, compensatory and consequential damages incurred in lost time, attorney's fees, and expenses in uncovering breaches of fiduciary duty," its costs and fees, pre- and post-judgment interest, restitution, and other relief that this court lacks the ability to award, such as "punitive damages."[23]

Defendants have moved to dismiss Counts I, II, and IV pursuant to Court of Chancery Rule 23.1, and to dismiss all claims pursuant to Court of Chancery Rule 12(b)(6). The parties fully briefed the motion and the court heard oral argument on March 4, 2021.

## II. LEGAL ANALYSIS

This decision first addresses Rudin's motion to dismiss the claims asserted against him. It then addresses Blake's and Faustman's Rule 23.1 motion as to Plaintiff's claims for breach of fiduciary duty and, separately, Plaintiff's claim for unjust enrichment. It last addresses Blake's and Faustman's Rule 12(b)(6) motion as to Plaintiff's claim under Section 275 of the DGCL.

---

[23] *See* Compl. at Request for Relief; *JSS, Ltd. v. Steelpoint CP Hldgs., LLC*, 2019 WL 5092896, at *4 n.22 (Del. Ch. Oct. 11, 2019) (citing *Beals v. Wash. Int'l, Inc.*, 386 A.2d 1156, 1157–60 (Del. Ch. 1978)) (noting that this court lacks the jurisdiction to award punitive damages).

### A. Rudin

Rudin argues that Plaintiff fails to state a claim against him because Plaintiff alleges no facts specific to him and the relevant allegations are asserted "Against All Defendants," which is impermissible group pleading.[24]

The Complaint states that Rudin "was the interim Chief Executive Officer . . . for about a week."[25] The Complaint fails, however, to allege a single fact related to Rudin's weeklong stint as CEO in February 2019. In fact, every reference in the Complaint to events occurring in February 2019 mention Blake and Faustman by name but do not mention Rudin.[26]

The Complaint groups Rudin in the defined term "Defendants," but many of the factual allegations that reference "Defendants" occurred before or after February 2019.[27] A plaintiff must adequately plead a breach of fiduciary duty claim "against each individual director [or officer]; so-called 'group pleading' will not suffice."[28]

Because there are no specific factual allegations as to Rudin in his capacity as interim CEO, it is not reasonably conceivable that he breached his fiduciary duties. To the extent that the allegations encompass Rudin by nature of Plaintiff's reference to

---

[24] *See* Dkt. 33 ("Defs.' Opening Br.") at 24. Because Plaintiff failed to respond to this argument in its answering brief, any response is deemed waived. *See* Pls.' Answering Br.; *Emerald P'rs*, 726 A.2d at 1224 ("Issues not briefed are deemed waived.")

[25] Compl. ¶ 6.

[26] *See id.* ¶¶ 16–17, 20.

[27] *See, e.g.*, *id.* ¶¶ 21–23, 41–42, 56.

[28] *See In re USG Corp. S'holder Litig.*, 2020 WL 5126671, at *23 (Del. Ch. Aug. 31, 2020) (quoting *Reith v. Lichtenstein*, 2019 WL 2714065, at *18 (Del. Ch. June 28, 2019)).

9

"Defendants," that constitutes impermissible group pleading. Accordingly, all Counts brought against Rudin are dismissed.

## B. Breach of Fiduciary Duty

Blake and Faustman argue that Plaintiff's derivative claims for breach of fiduciary duty be dismissed under Court of Chancery Rule 23.1. Blake and Faustman contend that Plaintiff's pre-suit communications with the Board constitute pre-suit demand under Rule 23.1 and, therefore, the tacit concession doctrine bars Plaintiff from pursuing claims that relate to the subject matter of the demand. Plaintiff counters that the pre-suit communications may not be considered by the court and that they do not constitute pre-suit demands under Delaware law in any event.

The tacit concession doctrine is an aspect of the demand requirement procedurally embodied in Rule 23.1, which derives from the bedrock principle that the board of directors, rather than stockholders, manage the business and affairs of the corporation.[29] A board's authority to manage the business and affairs of the corporation includes deciding to pursue or refrain from pursuing litigation on behalf of the corporation.[30]

As part of this board-centric model, Rule 23.1 presents a stockholder wishing to bring a derivative action with two options. Either the stockholder makes a pre-suit demand

---

[29] *See* Ct. Ch. R. 23.1; 8 *Del. C.* § 141(a).

[30] *Spiegel v. Buntrock*, 571 A.2d 767, 772–73 (Del. 1990); *Aronson v. Lewis*, 473 A.2d 805, 811–12 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

10

that the board of directors pursue the claims at issue,[31] or the stockholder must plead with particularity that it would have been futile to present the matter to the board.[32]

Of the two potential routes presented by Rule 23.1—pleading demand excusal with particularity or making a pre-suit demand—the former is a steep road, but the latter is "steeper yet."[33] By making a pre-suit demand, a stockholder "tacitly concedes" the disinterest and independence of a majority of the board to respond to the demand, as the Delaware Supreme Court held in *Spiegel v. Buntrock*.[34]

---

[31] Ct. Ch. R. 23.1; *see also Spiegel*, 571 A.2d at 773.

[32] Ct. Ch. R. 23.1; *see also Spiegel*, 571 A.2d at 774; *Klein v. H.I.G. Cap., L.L.C.*, 2018 WL 6719717, at \*5 (Del. Ch. Dec. 19, 2018); *Zucker v. Hassell*, 2016 WL 7011351, at \*1 (Del. Ch. Nov. 30, 2016).

[33] *Zucker*, 2016 WL 7011351, at \*1.

[34] *Spiegel*, 571 A.2d at 777 ("By electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation."); *see also Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991) ("[B]y making demand upon a board before filing suit, [a stockholder plaintiff] tacitly concedes the independence of a majority of the board to respond." (internal quotation marks omitted)), *overruled on other grounds by Brehm*, 746 A.2d 244; *Grimes v. Donald*, 673 A.2d 1207, 1218–19 (Del. 1996) ("If a demand is made, the stockholder has spent one—but only one—'arrow' in the 'quiver.' The spent 'arrow' is the right to claim that demand is excused."), *overruled on other grounds by Brehm*, 746 A.2d 244; *Scattered Corp. v. Chi. Stock Exch., Inc.*, 701 A.2d 70, 74 (Del. 1997) (stating that "if the stockholders make a demand, as in this case, they are deemed to have waived any claim they might otherwise have had that the board cannot independently act on the demand"), *overruled on other grounds by Brehm*, 746 A.2d 244; *Espinoza v. Dimon*, 124 A.3d 33, 36 (Del. 2015) ("Delaware law . . . requires that the decision of an independent committee to refuse a demand should only be set aside if particularized facts are pled supporting an inference that the committee, despite being comprised solely of independent directors, breached its duty of loyalty, or breached its duty of care, in the sense of having committed gross negligence.");, 2019 WL 549938, at \*8 (clarifying that, by making a pre-suit demand, "the plaintiff accepts that the number of board members necessary to carry a vote, typically a majority, lacks conflicts with respect to the demand"); *Busch v. Richardson*, 2018 WL 5970776, at \*8 (Del. Ch. Nov. 14, 2018) ("[A] stockholder plaintiff who makes a demand 'concedes that the board had the requisite

11

By operation of the tacit-concession doctrine, a board's decision to refuse a demand is subject to the business judgment rule. After making a pre-litigation demand, a stockholder plaintiff may not pursue claims challenging the subject matter of the demand; the stockholder is limited to a claim that the board wrongfully refused the demand.[35]

Blake and Faustman contend that the January 2020 emails between Plaintiff and the Board were pre-suit demands under Rule 23.1 that limit Plaintiff to claims for wrongful refusal of the demands.

Plaintiff first responds that the court may not consider these communications when resolving a pleading-stage motion because they are not included or referenced in the complaint. This argument is fundamentally inconsistent with Delaware law. A plaintiff may not avoid the effects of the tacit-concession doctrine by omitting reference to pre-suit communications in the complaint.[36]

---

independence and disinterest to evaluate the demand objectively,' [and] the 'decision to refuse a plaintiff's demand is afforded the protection of the business judgment rule unless the plaintiff alleges particularized facts that raise a reasonable doubt as to whether the board's decision to refuse the demand was the product of valid business judgment.'" (quoting *Friedman v. Maffei*, 2016 WL 1555331, at *8 (Del. Ch. Apr. 13, 2016))).

[35] *Spiegel*, 571 A.2d at 775 ("A shareholder who makes a demand can no longer argue that demand is excused.").

[36] *Corvi*, 2019 WL 549938, at *2 (Del. Ch. Feb. 12, 2019); *see also* 4 Stephen A. Radin, *The Business Judgment Rule* 4495 (6th ed. 2009) ("The board's letter refusing a demand is part of the record before the court on a motion to dismiss a complaint alleging wrongful refusal of demand . . . pursuant to the principle that 'when the plaintiff fails to introduce a pertinent document as part of her pleading, . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading.'" (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327, at 438–39 (3d ed. 2004 & Supp. 2009))).

Plaintiff next argues that the pre-suit communications do not constitute pre-suit demands for purposes of Rule 23.1, but this argument too is amiss.

The burden of demonstrating that a pre-suit stockholder communication qualifies as a demand under Rule 23.1 lies with the party asserting as much—here, Blake and Faustman.[37] There are no "'magic words' establishing that a communication is a demand."[38] Nor is there an "all-inclusive legal formula" serving such a purpose.[39] Rather, "[t]hat determination is essentially fact-driven."[40]

In *Yaw*, then-Vice Chancellor Jacobs established three criteria for determining whether a pre-suit communication constitutes a pre-suit demand.[41] A pre-suit communication is a demand for purposes of Rule 23.1 if it provides "(i) the identity of the alleged wrongdoers, (ii) the wrongdoing they allegedly perpetrated and the resultant injury to the corporation, and (iii) the legal action the shareholder wants the board to take on the corporation's behalf."[42] Although the test contains three parts, it calls for a holistic analysis of the nature of the communication, asking whether the communication substantively places a board on notice of the claim to be pursued.[43]

The pre-suit communications in this case constitute pre-suit demands under *Yaw*.

---

[37] *See Corvi*, 2019 WL 549938, at *8–9.

[38] *Khanna v. McMinn*, 2006 WL 1388744, at *13 (Del. Ch. May 9, 2006).

[39] *Yaw v. Talley*, 1994 WL 89019, at *7 (Del. Ch. Mar. 2, 1994).

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *See Solak v. Welch*, 2019 WL 5588877, at *5 (Del. Ch. Oct. 30, 2019).

As to the first *Yaw* factor, Abhyanker's January 25 email to Blake and Faustman specifically charges them with "a gross breach of [their] fiduciary duties."[44] Blake and Faustman are therefore identified as alleged wrongdoers in the communication. Abhyanker's January 27 email likewise is sent to Blake and Faustman, who are again charged with "breaching their fiduciary duties."[45] The first *Yaw* factor, that pre-suit communications identify the alleged wrongdoers, is thus satisfied.

As to the second *Yaw* factor, the communications identify the wrongdoing that Blake and Faustman allegedly perpetrated and the resultant injury to UpCounsel. Abhyanker's January 25 email asserts that re-directing traffic to LinkedIn would be "a gross breach of [their] fiduciary duties" and would cause UpCounsel to be harmed due to "diminished" goodwill, revenue diverted to LinkedIn, and its asset value decreasing.[46] Abhyanker's January 25 email notes any redirection would "give rise to . . . a shareholder derivative lawsuit" due to the resulting harm to UpCounsel.[47] The January 27 email also charges the board members with "breaching their fiduciary duties . . . and self dealing [sic]."[48] The second *Yaw* factor, that the pre-suit communications identify the wrongdoing allegedly perpetrated by the wrongdoers and the resultant injury to the corporation, is also satisfied.

---

[44] Blake Decl. Ex. 4.

[45] Blake Decl. Ex. 5.

[46] Blake Decl. Ex. 4.

[47] *Id.*

[48] Blake Decl. Ex. 5.

14

As to the third *Yaw* factor, both pre-suit communications identify the legal action that Abhyanker urges the Board to take on UpCounsel's behalf. In his January 25 email, entitled "URGENT NOTICE - Minority Shareholder NOTICE to UpCOUNSEL board - >>>> Notice of Objection to Prospective Action by UpCounsel, Inc. & LinkedIn," Abhyanker made a "demand that Matthew Faustman, Mason Blake recuse themselves from ANY and ALL decisions" regarding redirection of traffic to LinkedIn.[49] He also "demand[ed] that Mason Blake be removed as the 'part time CEO'" of UpCounsel and demanded that the Board not redirect traffic to LinkedIn.[50] Furthermore, in Abhyanker's January 27 email entitled "Immediate Demand to Act, UpCounsel, Inc. Board," he asserts that "this email serves as a former [sic] demand" by the Abhyanker Family Trust for UpCounsel's Board to "[i]mmediately terminate . . . Faustman and Blake from the UpCounsel, Inc. board . . . and sue them for breaching their fiduciary duties . . . and self dealing [sic]."[51] In the event the Board refused such action, Abhyanker next demanded that the Board "[i]mmediately file a Third Party Interference of Contract claim against LinkedIn, Faustman, and Blake."[52]

The third *Yaw* factor, that the pre-suit communication contains legal action the stockholder wants the board to take on the corporation's behalf, is therefore also satisfied.

---

[49] Blake Decl. Ex. 4.

[50] *Id.*

[51] Blake Decl. Ex. 5.

[52] *Id.*

Moreover, in his two emails, Abhyanker said "demand" multiple times and made various demands upon the Board. Furthermore, in his January 27 email, Abhyanker cites *Rales v. Blasband*, noting that "[t]his email serves as an Official Notice to the Board, per *Rales v. Blasband*."[53] It would be an unreasonable contortion of these communications to conclude that they were anything other than a demand for the purposes of Rule 23.1.

Because Plaintiff made multiple pre-suit demands, Plaintiff is limited to claiming that the Board wrongfully refused the demands. The Complaint, however, does not assert a claim for wrongful refusal. Instead, the Complaint does precisely what *Spiegel* bars: it makes a claim for demand futility following multiple, actual demands made upon the Board. As such, Counts I and II for breach of fiduciary duty are dismissed pursuant to Rule 23.1.

### C.    Unjust Enrichment

Blake and Faustman argue that Plaintiff's derivative claims for breach of unjust enrichment should also be dismissed under Court of Chancery Rule 23.1.

Post-*Spiegel*, "a judicial determination that a plaintiff has made a demand carries with it significant legal consequences."[54] Delaware courts have toed a hard line against stockholder plaintiffs attempting to game the tacit concession doctrine, applying the

---

[53] *Id.*

[54] *Yaw*, 1994 WL 89019, at *6.

16

doctrine to bar all derivative claims arising from the subject matter of the demand, even legal theories not expressly identified by the stockholder or considered by the board.[55]

Plaintiff's unjust enrichment claim arises from the subject matter of the demands and thus must also be dismissed under Rule 23.1.[56] The unjust enrichment claim arises from the LinkedIn Agreement. Plaintiff alleges that Blake and Faustman were unjustly enriched because the LinkedIn Agreement was a "sweetheart deal" for them.[57] According to Plaintiff, Blake and Faustman "worked together to approve the wind-down plan" in connection with the LinkedIn Agreement because it would result in increased compensation for them.[58] If there were any doubt that the unjust enrichment claims were

---

[55] *See, e.g.*, *Solak*, 2019 WL 5588877, at *4 ("[A] stockholder may not pursue demand refusal and demand excusal strategies simultaneously in order to 'cover all the bases.' The Delaware Supreme Court has broadly interpreted this limitation to apply to all derivative claims arising from the subject matter of the demand, even legal theories not expressly identified by the stockholder or considered by the board." (quoting *Levit v. Shrontz*, 1992 WL 81228, at *5 (Del. Ch. Apr. 20, 1992))), *aff'd*, 228 A.3d 690 (Del. 2020); *see also Grimes*, 673 A.2d at 1219 ("[P]laintiff may not bifurcate his theories relating to the same claim . . . . [Plaintiff's] demand letter conceded that demand was required for all legal theories arising out of the set of facts described in the demand letter."); Deborah A. Demott & David F. Cavers, *Shareholder Derivative Actions: Law and Practice* § 5.10, at 725 (2018) ("[A] demand implicitly encompasses all legal theories or remedies arising out of the same set of circumstances. Under this rule, there is no incentive to bifurcate or hold back legal theories, in the hope that demand might be excused on the unexpressed claim arising out of the same set of facts." (citing *Grimes*, 673 A.2d at 1219)).

[56] *See supra* Section II.B. Plaintiff seems to agree in its answering brief that the two claims arise from the same subject matter. *See* Pl.'s Answering Br. at 25 ("Courts are hesitant to deny a claim for unjust enrichment simply because it is duplicative of an earlier count.").

[57] Compl. ¶ 90.

[58] *Id.* ¶¶ 91–93.

17

part and parcel of the pre-suit communications, Abhyanker's January 27 email eliminates it by specifically charging Blake and Faustman with "unjust enrichment."[59]

Because Plaintiff's unjust enrichment claims arise from the subject matter of the pre-suit demands, Plaintiff is limited to claiming that the Board wrongfully refused the demands. As discussed above, however, the Complaint does not do so. Accordingly, Count IV for unjust enrichment is also dismissed pursuant to Rule 23.1.

### D. Section 275 of the DGCL

Plaintiff seeks to dismiss Plaintiff's claim under Section 275 of the DGCL pursuant to Court of Chancery Rule 12(b)(6).

On a motion to dismiss pursuant to Rule 12(b)(6), the court accepts "all well-pleaded factual allegations in the Complaint as true, [and] accept[s] even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the claim."[60] The court "is not, however, required to accept as true conclusory allegations without specific supporting factual allegations."[61] The court draws "all reasonable inferences in favor of the plaintiff, and den[ies] the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[62]

---

[59] Blake Decl. Ex. 5.

[60] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

[61] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (internal quotation marks omitted).

[62] *Cent. Mortg.*, 27 A.3d at 536 (citing *Savor*, 812 A.2d at 896–97).

Blake and Faustman argue that Plaintiff's claim for violation of Delaware General Corporation Law Section 275 should be dismissed because UpCounsel's Board has neither proposed nor implemented a plan of dissolution. Plaintiff counters that Blake notified Plaintiff that a plan of dissolution was being carried out and UpCounsel would soon dissolve but that Plaintiff neither receive notice of a meeting to vote on nor provided written consent for such plan.

Blake and Faustman respond by arguing that, "as is evident on the record already developed in this action, . . . no plan of dissolution has been proposed to the stockholders."[63] When advancing this argument, they rely primarily on exhibits not incorporated in the Complaint. For example, they cite to: the Declaration of Mason Blake; a September 11, 2019 consent solicitation and letter to stockholders regarding the LinkedIn Agreement; the LinkedIn Agreement; and signed stockholder consents to the LinkedIn Agreement.[64] The court cannot consider these documents on a motion pursuant to Rule 12(b)(6).

Because Defendants rely on documents outside of the pleadings in support of their motion, the motion will be treated as one for summary judgment under Rule 56.[65] Plaintiff

---

[63] Defs.' Opening Br. at 23.

[64] *See id.* at 23–26 (citing Blake Decl.; Blake Decl. Exs. 1–3); Dkt. 40 at 18–20 (citing Blake Decl.).

[65] *See* Ct. Ch. R. 12(b)(6); *Acero Cap., L.P. v. Swrve Mobile, Inc.*, 2021 WL 2207197, at *2 & n.5 (Del. Ch. June 1, 2021) (collecting authorities); *Lavi v. Wideawake Deathrow Ent., LLC*, 2011 WL 284986, at *1 (Del. Ch. Jan. 18, 2011); *see also Black v. Gramercy Advisors, LLC*, 2007 WL 2164286, at *1 (Del. Ch. July 23, 2007) ("It [is] not the court's duty to wade through the defendants' voluminous submissions, to search for arguments or

19

is granted leave to respond to the motion as a Rule 56 motion, submitting an affidavit pursuant to Rule 56(e) if appropriate.

## III.    CONCLUSION

For the foregoing reasons, Rudin's motion to dismiss the Complaint is GRANTED. Blake's and Faustman's motion to dismiss Counts I, II, and IV is GRANTED.  As to Count III, Blake's and Faustman's motion is converted to a motion pursuant to Rule 56, and the parties shall confer on a schedule for resolving that motion.

---

subarguments that could be decided on the basis of the well pleaded facts of the complaint alone.").